MELENDY & A. *v.* FERSON.

The plaintiffs and defendant had been partners, engaged in the lumber business in Wisconsin, selling their manufactured lumber in Racine and Chicago. In a suit upon an agreement of dissolution, it became a material inquiry whether the price of lumber fell after August, 1867. *Held,* that a lumber commission merchant in Racine might be asked the question, "Did the price of lumber become depreciated during the summer of 1867, and if so, how much?"

ASSUMPSIT, by Hervey D. Melendy and Charles F. Melendy against James S. Ferson, to recover a balance alleged to be due the plaintiffs by the terms of an agreement of dissolution of the firm of Melendy & Ferson.

It was admitted that the partnership was formed in February, 1867. The partnership property consisted in great part of timber, land, and a saw-mill on Chambers island, in Green bay, Wisconsin, and the lumber manufactured by the firm was sold in Racine and Chicago. It appeared that the firm was dissolved in August or September, 1867, the defendant buying out the plaintiffs. The defendant contended that he agreed to pay $3,500 in full, which it was admitted the plaintiffs had received. The plaintiffs contended that the defendant agreed to pay the plaintiffs what they had put into the concern (about $4,300), and a reasonable compensation for their labor, which it was claimed would amount to $975. The defendant admitted that in August, 1867, he made an agreement to pay the plaintiffs what they had put in, on condition that lumber did not depreciate (and also upon another condition). The defendant contended that the price of lumber fell considerably after the formation of the partnership, and before the making of this conditional agreement; also, after the making of the conditional agreement, and before the final agreement to pay $3,500, which he claimed was made in September.

It appeared by the deposition of Homer Glass, that he was a lumber commission merchant in Racine. Subject to exception, the following portion of his deposition was excluded:

*Interrogatory.* Did the price of lumber become depreciated during the summer of 1867, and if so, how much? *Answer.* It did; it depreciated between the first of June and the first of September five or six dollars per thousand.

*Interrogatory.* In your opinion, would the depreciation in the price of lumber, above referred to, affect the value of the milling interest of the plaintiffs and defendant at Chambers island? *Answer.* Yes, it would, in the same proportion as the difference in the price of lumber.

It appeared that Reuben Dowd was a lumber and commission merchant in Racine. Subject to exception, similar questions and answers in his deposition were excluded. The depositions of Glass and Dowd

were taken upon notice, but there was no appearance for the plaintiffs, and no objections at the caption to any of the interrogatories. Verdict for the plaintiffs. Motion to set aside the verdict.

The case was reserved.

*Sawyer & Stevens,* for the plaintiffs.

*Bailey* and *Wadleigh,* for the defendant.

LADD, J. We are unable to see, upon the case stated, how the second interrogatory and answer were material. If the payment by the defendant to the plaintiffs was, by the express terms of the contract between them, made to depend upon whether lumber depreciated or not, the effect of such depreciation on the value of the plaintiffs' milling interest at Chambers island was of no consequence. The question on that part of the case was, whether the plaintiffs were entitled to recover the sum they had put into the concern; and the defendant claimed that this was to depend, not on the fact concerning which the witness was asked his opinion in the second interrogatory, but on the other fact, whether or not lumber depreciated. So far as the case shows, therefore, we think the second interrogatory and answer were properly excluded.

It appears to have been a material inquiry on the trial, whether lumber did in fact depreciate after the agreement entered into in August, 1867.

The lumber manufactured by the firm was sold in Racine and Chicago. It cannot be, contended but that the state of the market at either of those places during the time covered by the inquiry would be admissible. The witness was a commission lumber merchant at Racine, and would be likely to know, and his answer shows he did know how that fact was. The first question excluded simply calls for such knowledge as he had on that subject, and we can see no reason why it was not admissible as the statement of a material fact within his knowledge. As the defendant's attorneys well say in their brief, " This witness's knowledge of the depreciation of lumber is like the knowledge of a witness as to the difference in length of two sticks of timber;" and their conclusion seems to be sound and in point, that a witness may be allowed to testify as to such difference in length where it is material, even if he has forgotten or never knew the length of both or either.

No objection was made to the form of the interrogatory, and we are of opinion that the evidence should have been admitted.

*Verdict set aside.*